IN THE UNITED STATES DISRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

JUSTIN BUTCHER and
JENNIFER BUTCHER,

      **Plaintiffs.**

v.                                     **Civil Action No. 1:20-CV-74**
                                          **(JUDGE KLEEH)**

HALLIBURTON ENERGY SERVICES, INC.;
ANTERO RESOURCES CORPORATION; and
SAFETY MANAGEMENT SYSTEMS, LLC,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION [ECF NO. 139] TO COMPEL HALLIBURTON ENERGY SERVICES, INC. TO PROVIDE MORE RESPONSIVE ANSWERS TO WRITTEN DISCOVERY PROPOUNDED BY PLAINTIFFS

Presently pending before the Court is Plaintiffs' Motion to Compel Halliburton Energy Services, Inc. ("Halliburton") to Provide More Responsive Answers to Written Discovery Propounded by Plaintiffs [ECF No. 139], filed on May 19, 2021. Also, the Court is in receipt of Halliburton's response in opposition, thereto, [ECF No. 152], filed on May 28, 2021.

By Order [ECF No. 142] dated May 20, 2021, United States District Judge Thomas S. Kleeh referred the motion to the undersigned Magistrate Judge for hearing and order as to appropriate disposition.

On June 2, 2021, the undersigned Magistrate Judge conducted a hearing on the subject motion [ECF No. 158], and took the parties' arguments under advisement.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs have brought claims alleging harm resulting from an industrial accident on a natural gas drilling operation being conducted in Ritchie County, in the Northern District of West

Virginia. Plaintiffs allege that Defendant Antero Resources Corporation ("Antero") managed and controlled the property on which the operation was located, and that Defendant Halliburton provided workers, equipment and services to build, maintain, and operate the drill site. Plaintiffs allege that Antero contracted with Defendant Safety Management Systems, LLC ("SMS") to provide job site safety services at the drilling operation.

By Memorandum Opinion and Order dated April 15, 2021 [ECF No. 126], Judge Kleeh dismissed two of Plaintiffs' claims as to Halliburton, namely the statutory deliberate intent claim and the fraud claim. Thus, only two claims remain as to Halliburton as this time – a claim for workers compensation discrimination and a claim for loss of consortium.[1]

The precise discovery requests – or even the overarching categories of discovery requests – in dispute are not readily apparent from a review of the record. However, during the hearing before the undersigned on June 2, 2021 [ECF No. 158], the undersigned discerned four basic issues in dispute. Those issues are: (1) document concerning Halliburton's debriefing of its own personnel after the incident in which Plaintiff Justin Butcher was injured, (2) Halliburton's and/or its employees' communications with the federal Occupational Safety and Health Administration ("OSHA") resulting from the incident, (3) information concerning Halliburton employees terminated from employment after the incident, and (4) Halliburton's objections to the most recent discovery requests propounded by Plaintiffs, namely, Plaintiffs' Third Set of Requests for Production of Documents.

In general terms, Halliburton objects to these discovery requests as improperly seeking attorney-client privileged material and/or attorney work product. Halliburton also objects to many of the discovery requests as being irrelevant now that certain claims against Halliburton have been

---

[1] There are other claims still pending as to defendants other than Halliburton.

dismissed. Plaintiffs, on the other hand, argue that they are seeking factual information, not privileged and/or confidential materials derived from such factual information. Plaintiffs also argue that, because they still have active claims against Antero and SMS, the information they seek from Halliburton has bearing on those claims even if certain claims against Halliburton itself have been dismissed.

As to materials pertinent to issues (1) and (2) delineated above, the undersigned directed Halliburton's counsel to provide materials to the Court for an *in camera* review, which counsel did on June 7, 2021. The undersigned has conducted this *in camera* review, and thus the matter is ripe for issuance of this Order.

## II. ISSUES, ANALYSIS, AND DISPOSITION

Under the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any <u>nonprivileged</u> matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Significantly, "relevant information need not be admissible at the trial if the discovery appears reasonable calculated to lead to the discovery of admissible evidence." <u>Id</u>.

As indicated above, where privileged information is involved, discovery is not so readily had. Much of the resolution here turns on the application of the attorney-client privilege and work product doctrine. The undersigned recognizes that, in civil actions such as this one where the Court's jurisdiction is based upon the parties' diversity of citizenship, the federal common law governs the applicability of the work product doctrine, while state law governs the applicability of

the attorney-client privilege. <u>Nicholas v. Bituminous Cas. Corp.</u>, 235 F.R.D. 325, 329 n. 2

(N.D.W.V. 2006).

> As for the attorney-client privilege, the Supreme Court of the United States has explained:

> The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

<u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981) (citation omitted). Moreover, under West

Virginia caselaw:

> In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential.

<u>State ex rel. U.S. Fid. & Guar. Co. v. Canady</u>, 194 W. Va. 431, 442, 460 S.E.2d 677, 688 (1995)

(quoting Syl. Pt. 2, <u>State v. Burton</u>, 163 W. Va. 40, 254 S.E.2 129 (1979)).

Similarly, the work product doctrine of course is long embedded in our jurisprudence.

"[W]hile the protection of opinion work product is not absolute, only extraordinary circumstances

requiring disclosure permit piercing the work product doctrine. We acknowledge that the

opinion work product rule should be jealously guarded . . ." <u>In re Doe</u>, 662 F.2d 1073, 1079 (4th

Cir. 1981).

### A. Halliburton Debriefing Document

The undersigned conducted an *in camera* review of the document at issue here. This

document contains summaries of interviews of workers who were at the site of the incident. Yet,

they are summaries prepared at the direction of – and apparently generated for the use of – legal

counsel. This is a document imbued with precisely the type of information generated with an expectation of being shielded from disclosure because of operation of the attorney-client privilege. It is the sort of information that, were the shoe on the other foot, so to speak, Plaintiffs likewise would wish to be so protected. The undersigned **FINDS** that these materials are attorney-client privileged and are not required to be disclosed.[2] Accordingly, Plaintiffs' motion is **DENIED in part** as to this issue.

### B. Halliburton Communications with OSHA

The undersigned conducted an *in camera* review of the approximately 430 pages of materials produced by Halliburton's counsel. This all relates Halliburton's communications with OSHA in the wake of the incident giving rise to Plaintiffs' claims here.

It is not entirely clear from Halliburton's brief, but it appears that, at least in part, Halliburton claims that these materials are protected by the attorney-client privilege and/or the work product doctrine because some or all of them may have been produced to OSHA with the involvement of legal counsel. But what Halliburton especially stresses is that Plaintiffs' deliberate intent and fraud claims against Halliburton have been dismissed. And Halliburton emphasizes that OSHA's investigation was limited only to Halliburton, not others, and that there was no OSHA citation for a violation of lockout/tagout ("LOTO") protocols.[3] Moreover, Halliburton argues that a Master Service Agreement between Halliburton and Antero absolves Halliburton of liability here, and thus of any obligation to engage in the discovery Plaintiffs seek. Therefore, Halliburton argues, information here is not subject to disclosure through the discovery process.

---

[2] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. [ECF No. 170].

[3] LOTO procedures are designed to disable machinery and equipment during maintenance and repair so as to prevent worker injury resulting from release of hazardous energy. Apparently, Halliburton did receive a citation from OSHA for another issue, unrelated to LOTO, which does <u>not</u> have bearing on the arguments as to the discovery dispute there.

Plaintiffs, however, emphasize that negligence claims still are pending as to Halliburton's co-Defendants. Plaintiffs' ability to develop their case, they argue, turns on discovery gleaned from Halliburton. For instance, according to Plaintiffs, if discovery obtained from Halliburton shows that Halliburton routinely violated LOTO protocols, then that bears on co-Defendants' foreseeability of the incident giving rise to Plaintiffs' claims.[4]

The parties argue about whether the doctrine of *respondeat superior* applies here to attach liability to Halliburton. Among other authorities, they each cite to, and argue as to the applicability of, the Paxton case. In that decision, the West Virginia Supreme Court of Appeals explained:

> There are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of *respondeat superior:* (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

Syl. Pt. 5, Paxton v. Crabtree, 184 W. Va. 237, 240, 400 S.E.2d 245, 248 (1990). However, it appears that, as much as anything, the parties here are arguing about the very existence liability and whether it can attach, rather than about discovery which may ultimately lead to evidence about liability. The parties' arguments in this regard are better left to the dispositive motions phase and/or trial of this matter, not the discovery phase. Thus, the undersigned focuses on what is permissible and contemplated under Rule 26(b).

To this end, the undersigned has conducted an *in camera* review of several hundred pages which appear to contain communications between Halliburton and OSHA as to the incident at issue. Largely, the materials appear to contain duplicate communications. In any case, there is

---

[4] Plaintiffs have pointed out that if they are not permitted to seek certain discovery here as to Halliburton as a party defendant, then they instead would seek discovery via subpoenas and the parties may well be back before the Court on these issues upon objection to subpoenas rather than upon objection these discovery requests. In its response brief, Halliburton recognizes as much.

nothing about them which are privileged and confidential, as they are Halliburton's communications with an outside, third party (OSHA). That certain claims against Halliburton have been dismissed is of no moment in this context. It is not disputed that Halliburton and its co-Defendants worked closely together on the site in question, and there was much overlap between and among its people, equipment, and overall operations. These parties may have aimed to delineate their rights, responsibilities, and liabilities as to one another, but again, those are questions more suitably litigated at other stages of this case.

In the discovery phase, the undersigned is concerned more with what may be relevant to the claims and defenses. Thus, it stands to reason that Halliburton's communications with the very federal agency charged with investigating the incident giving rise to Plaintiffs' claims may have bearing on claims and defenses here. And per the analysis necessary under Rule 26(b)(1), the information sought is proportional to the needs of the case. The information already is gathered and packaged; Halliburton's counsel of course has easy access to it and readily can share it with Plaintiffs' counsel. The burden and expense to Halliburton in producing it at this stage is relatively minimal. And it is established that Halliburton has easy access to the materials while the Plaintiffs have virtually no access to it.  Accordingly, with one important exception, the undersigned **FINDS** that these materials should be disclosed to Plaintiffs.[5]

The exception here is that these materials, at various places, contain duplicates of the Halliburton debriefing document summarized at (A), immediately above, which the undersigned finds to be protected by the attorney-client privilege. In ordering Halliburton to produce the materials here, the undersigned is careful to clarify that the debriefing document need not be produced and should be excised from Halliburton's production to Plaintiffs. From the

---

[5] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. [ECF No. 171].

undersigned's review, it appears that the debriefing document is contained therein as follows: BATES 215-216, 341-343, 346-348, 1043-1044, 1312-1314, 1744-1745, and 2551-2553. If it is contained elsewhere therein, Halliburton likewise need not produce it.

Accordingly, Plaintiffs' motion is **GRANTED in part** as to this issue, and the undersigned **DIRECTS** Halliburton to produce to Plaintiffs, forthwith, the materials specified here.

### C. Information About Terminated Halliburton Employees

Plaintiffs state that, after the incident at issue, Halliburton terminated certain of Plaintiff Justin Butcher's supervisors. Plaintiffs state that these terminations are related to the incident. Plaintiffs do not seek the entirety of these personnel files from Halliburton, but rather the portions related to the supervisors' disciplinary history. Plaintiffs are willing to make these materials subject to the Protective Order previously entered in this matter. In response, Halliburton acknowledges that it terminated certain employees after the incident. However, as with the communications with OSHA, analyzed above, Halliburton argues that these materials need not be produced in light of the Court's previous dismissal of certain claims against it.

Again, this stage of the proceedings is not for litigating the degree of liability (or lack thereof) as between and among Defendants here. It is about fact-finding. Examining this through the lens of Rule 26(b)(1), it is entirely plausible that, if Plaintiffs are correct about the reason for these supervisors' terminations, information about their discipline may well yield information about what happened to give rise to the incident, and how it happened. Plaintiffs are not making an unreasonable request. They seek only relevant portions of the files, and are willing to make them subject to the Protective Order. The information sought is not said to be voluminous or onerous to produce. Of course, it is not something which otherwise is available to Plaintiffs.

Accordingly, Plaintiffs' motion is **GRANTED in part** as to this issue, and the undersigned **DIRECTS** Halliburton to produce to Plaintiffs, forthwith, the materials specified here.

### D. Halliburton Objections to Plaintiffs' Third Set of Requests for Production of Documents

The final category of information in dispute concerns responses to Plaintiffs' Third Set of Requests for Production of Documents to Halliburton. [See ECF Nos. 139-3, 139-8]. There are 25 requests for production. The requests for production pertain to a range of information and materials – from records concerning compliance with LOTO procedures, to equipment maintenance, to documents traded with OSHA relative to the incident (addressed above), to documents about how employees at the site were instructed to don certain clothing/company insignia.

Except for the last two requests for production (Nos. 24-25), Halliburton lodged wholesale objections to the discovery requests here. Halliburton's wholesale, overarching objections can generally be characterized as follows: (1) the requests for production are overly broad and not narrowed in scope/time, (2) the requests for production are not relevant to a claim or defense and not proportional to the needs of the case, particularly in light of the Court's dismissal of the deliberate intent and fraud claims against Halliburton. Aside from the overarching objections, in certain instances (e.g. Requests for Production Nos. 11, 12), Halliburton objects as to the requests as lacking specificity required under Rule 34. In at least one instance (Request for Production No. 17), Halliburton objects, at least in part, to providing information by claiming that it is subject to the attorney-client privilege or is protected work product. And in at least one other instance (Request for Production No. 10), Halliburton objects, at least in part, to providing information because the request is best directed to another party.

Initially, the undersigned addresses Halliburton's wholesale, overarching objections.

First, as for narrowing Plaintiffs' requests to a reasonable temporal scope, the undersigned **FINDS** that it is necessary. During the hearing before the undersigned on June 2, 2021, counsel for Plaintiffs and Halliburton agreed that the timespan of Plaintiff Justin Butcher's work at the job site was March 14, 2018 to April 30, 2018. Accordingly, the undersigned **FINDS** that Plaintiffs are entitled to information sought in the various requests for production at issue here (subject to additional limitations as set forth herein) but only as to this timespan of Plaintiff Justin Butcher's work at the job site.

Second, as for whether information still is discoverable in light of the dismissal of certain claims against Halliburton, Halliburton's arguments are unavailing in this context. As with the analysis above concerning Halliburton's communications with OSHA, to limit discovery here because of the dismissal of the deliberate intent and fraud claims is premature. Again, the discovery sought here is not intended to probe liability only as to Halliburton. It also is intended to glean information about other parties, and the facts and circumstances giving rise to the claims and defenses still pending as to those parties. As such, the undersigned **FINDS** that the discovery sought it is permissible, even if certain claims against Halliburton have been dismissed.

As for the smattering of tailored, individual objections to certain of the requests for production, Halliburton certainly is not required to produce materials which are protected by the attorney-client privilege and/or the work product doctrine. Nor does it appear that Plaintiffs wish to pierce those privileges. Also, to the extent which Halliburton is concerned about lack of specificity in the requests under Rule 34, Halliburton and its counsel certainly have a command of this case, its role in the overall operations at the job site, and the materials which are germane to claims and defenses, so as to be able to produce responsive materials. Without more, the undersigned cannot evaluate what appears to be merely a *pro forma* objection. Finally, Halliburton

may argue that another party is better suited to produce responsive information. However, at this stage of the proceedings, Halliburton surely knows what information it has or does not have, and if the information exists, where it is and whether it is responsive. Again, lacking additional information and context, the undersigned cannot sustain what appears to be a *pro forma* objection.

Thus, in light of this review and the limitations set forth, Plaintiffs' motion as to their Third Set of Requests for Production of Documents to Halliburton is **GRANTED in part** and **DENIED in part** and the undersigned **DIRECTS** Halliburton to supplement its responses in accordance herewith.

### III. CONCLUSION

Based on the foregoing, and as set forth more particularly herein, Plaintiff's motion is hereby **GRANTED in part** and **DENIED in part**. It is all so **ORDERED**.

The Clerk of the Court is directed to provide a copy of this Order to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: June 14, 2021**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE

11