IN THE UNITED STATES DISRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

JUSTIN BUTCHER and
JENNIFER BUTCHER,

       Plaintiffs.

v.                                                                    Civil Action No. 1:20-CV-74
                                                                      (JUDGE KLEEH)

HALLIBURTON ENERGY SERVICES, INC.;
ANTERO RESOURCES CORPORATION; and
SAFETY MANAGEMENT SYSTEMS, LLC,

       Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFFS' MOTION [ECF NO. 147] TO COMPEL DISCOVERY
RESPONSES FROM DEFENDANT ANTERO RESOURCES CORPORATION**

Presently pending before the Court is Plaintiffs' Motion to Compel Discovery Responses

from Defendant Antero Resources Corporation ("Antero") [ECF No. 147], filed on May 26, 2021.

Also, the Court is in receipt of Antero's response in opposition, thereto, [ECF No. 160], filed on

June 2, 2021.

By Order [ECF No. 149] dated May 26, 2021, United States District Judge Thomas S.

Kleeh referred the motion to the undersigned Magistrate Judge for hearing and order as to

appropriate disposition.

On June 4, 2021, the undersigned Magistrate Judge conducted a hearing on the subject

motion [ECF No. 163], and took the parties' arguments under advisement.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs have brought claims alleging harm resulting from an industrial accident on a

natural gas drilling operation being conducted in Ritchie County, in the Northern District of West

Virginia. Plaintiffs allege that the accident occurred because of failure to follow protocols for lockout/tagout ("LOTO") procedures. LOTO procedures are designed to disable machinery and equipment during maintenance and repair so as to prevent worker injury resulting from release of hazardous energy. Plaintiffs allege that Antero managed and controlled the property on which the operation was located, and that Defendant Halliburton Energy Services, Inc. ("Halliburton") provided workers, equipment and services to build, maintain, and operate the drill site. Plaintiffs allege that Antero contracted with Defendant Safety Management Systems, LLC ("SMS") to provide job site safety services at the drilling operation.

At the outset of the hearing on June 4, 2021, the undersigned inquired of Plaintiffs' and Antero's counsel whether they had met and conferred pursuant to the paperless order entered on May 27, 2021. [ECF No. 150]. Counsel indicated that they had not, so the undersigned directed that they meet and confer as directed, and then continued the hearing until later that same day. After counsel for these parties met and conferred, the undersigned reconvened counsel and conducted a hearing on the subject motion.

As a threshold matter, it was unclear from Plaintiffs' motion precisely which set(s) of discovery requests were at issue. Certain sets of discovery requests are attached as exhibits to Plaintiffs' motion. It appears that Plaintiffs conflated and/or misidentified certain of these sets of discovery in their motion vis-à-vis the actual attachments to the motion and how they are designated as exhibits. Nonetheless, after clarification with counsel on the record, the undersigned is able to specify with a reasonable degree of certainty which particular discovery requests at issue are part of which set of discovery.

To this end, counsel indicated on the record that they resolved all of the issues raised in Plaintiffs' motion except discovery requests as to the following:

A. Document noted in Antero's privilege log, BATES 109A, consisting of an email and attachment, that being a "root cause" analysis of the incident at the job site giving rise to Plaintiffs' claims, sought in Plaintiffs' First Set of Interrogatories, Requests for Admissions, and Requests for Production of Documents, attached as Exhibit A to Plaintiffs' Motion [ECF No. 147-1], encompassed by Interrogatory No. 9 therein.

B. Prior lawsuits concerning claims for failure to follow LOTO procedures, sought in Plaintiffs' First Set of Interrogatories, Requests for Admissions, and Requests for Production of Documents, attached as Exhibit A to Plaintiffs' Motion [ECF No. 147-1], encompassed by Interrogatory No. 10 therein.

C. Training videos/materials for employees and contractors concerning LOTO procedures, and training videos/materials for employees and contractors concerning maintenance of the equipment on which Plaintiff was working at the time of the incident, sought in Plaintiffs' First Set of Interrogatories, Requests for Admissions, and Requests for Production of Documents, attached as Exhibit A to Plaintiffs' Motion [ECF No. 147-1], encompassed by Requests for Production Nos. 61 and 62 therein.

D. Information concerning "non-productive time." This is time, according to Plaintiffs, for which Halliburton was not getting paid if resources were not being produced at the drilling operation in question, sought in Plaintiffs' Second Set of Requests for Production of Documents, attached as Exhibit I to Plaintiffs' Motion [ECF No. 147-9], encompassed by Request for Production No. 1 therein.

E. Information concerning the roles and responsibilities of SMS personnel at the job site, sought in Plaintiffs' Second Set of Requests for Production of Documents, attached as

Exhibit I to Plaintiffs' Motion [ECF No. 147-9], encompassed by Request for Production No. 10 therein.

## II. ISSUES, ANALYSIS, AND DISPOSITION

Under the Federal Rules of Civil Procedure:

Parties may obtain discovery regarding any <u>nonprivileged</u> matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Importantly, "relevant information need not be admissible at the trial if the discovery appears reasonable calculated to lead to the discovery of admissible evidence." <u>Id</u>. The undersigned addresses issues A through E, as delineated above, in turn.

### A. "Root Cause" Analysis

This analysis, memorialized in a written document (email and attachment), was prepared internally by Antero shortly after the incident giving rise to Plaintiffs' claims. According to Plaintiff, it is an item which customarily is prepared after such an incident. Of course, it is of interest to Plaintiffs because it may well offer clues as to what went awry with Defendants and the job site to lead to the injuries at issue. At the hearing before the undersigned, Plaintiffs' counsel did concede that if the analysis was prepared in anticipation of litigation, then it is privileged and not subject to disclosure. Antero argues that the analysis should be off limits because it was prepared in anticipation of litigation arising from potential regulatory sanction or privately.

To be sure, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R.

4

Civ. P. 26(b)(3)(A). By the rule's plain reading, in order for a document to be protected here, it need not necessarily be prepared by legal counsel.

Here, though, it appears that, given the totality of the circumstances, the analysis was prepared in anticipation of litigation and should be shielded from disclosure. There is no dispute among the parties that Plaintiff Justin Butcher sustained serious physical injury, and that the seriousness of the injury was evident immediately. Thus, it would stand to reason that legal processes, regulatory or otherwise, would be initiated in due course. Also, there is no dispute that Plaintiffs retained private counsel shortly after the incident, and that Plaintiffs' private counsel was in touch with Defendants here within days, or just a few short weeks, after the incident. Further, there is no dispute that federal regulators with the Occupational Safety and Health Administration were involved quickly after the incident. It only stands to reason, then, that a "root cause" analysis in this situation, resulting from these circumstances, would be prepared with an eye toward litigation in one form or another.

Accordingly, based on the forgoing, the undersigned **FINDS** that this analysis was prepared in anticipation of litigation and is not required to be disclosed to Plaintiffs. **Accordingly**, Plaintiffs' motion is **DENIED in part** as to this issue.

### B. Prior Lawsuits

Plaintiffs seek information concerning claims for failure to follow LOTO procedures for the last 10 years. At the hearing before the undersigned, Plaintiffs narrowed the request to such lawsuits for the past five years. Antero continues to object even in light of the narrowed request. Antero argues that such lawsuits could involve actors other than co-Defendants here. Antero also objects because of the lack of allegations here at to Antero itself and LOTO procedures. Further, Antero objects because of the geographic breadth of the request.

Nonetheless, Plaintiffs' claims here arise directly from allegations concerning LOTO procedures. Evidence of such issues arising at other Antero operations may well lead to information about claims and defenses pertinent to the instant matter. Plaintiffs have scaled back the temporal scope of their request to half of the period of time originally sought. A five-year timeframe is not an onerous period of time to search for and produce such information. That the information sought may involve parties other than co-Defendants here or other geographic locations is not a reason to deny the request. If the information disclosed ultimately leads to evidence which Plaintiffs seek to admit, then Antero can argue about those distinctions at that later stage of the litigation. But at this stage of the litigation, those reasons are not enough to narrow the scope of discovery.

Accordingly, the undersigned **FINDS** that these materials should be disclosed to Plaintiffs. Plaintiffs' motion is **GRANTED in part** as to this issue, and the undersigned **DIRECTS** Antero to produce to Plaintiffs, forthwith, the materials specified here within the five-year timeframe.

### C. Training Materials/Videos

Plaintiffs seek from Antero training videos/materials for employees and contractors concerning LOTO procedures, and training videos/materials for employees and contractors concerning maintenance of the equipment on which Plaintiff was working at the time of the incident. Clearly, such information has bearing on how operations at the drill site were conducted. And of course, the nature of such operations is applicable to any analysis of liability or lack thereof.

It matters not if Antero or other parties actually provided or produced the videos/materials sought. If Antero has them, then it should produce them. And if Antero has nothing responsive, then it should supplement its response to state as much. But to the extent which Antero has responsive information here, the undersigned **FINDS** that it should be disclosed to Plaintiffs.

Plaintiffs' motion is **GRANTED in part** as to this issue, and the undersigned **DIRECTS** Antero to produce to Plaintiffs, forthwith, the materials specified here.

### D. Information Concerning "Non-Productive" Time

Plaintiffs seek this information because they wish to demonstrate the relationship between Antero and Halliburton as to the drill site in question. Plaintiffs represent that Halliburton did not get paid for "non-productive" time, such that there may have been incentive to rush work on the site. With such an incentive to rush, Plaintiffs argue, safety issues may have been prioritized lower than generating revenues.

Antero argues that there was no such incentive to rush the work at the site, and that non-productive time is not the same as time for which Halliburton could not bill Antero. To this end, Antero states that a proprietary agreement between the two demonstrates this. The undersigned directed Antero's counsel to provide this document for an *in camera* review, which Antero's counsel did on June 7, 2021.[1]

Based upon an in camera review of this document, the undersigned **FINDS** that the document is responsive to Plaintiffs' discovery request here, and may well have bearing on claims and defenses at issue in this matter. Accordingly, Plaintiffs' motion is **GRANTED in part** as to this issue and the undersigned **DIRECTS** Antero to produce to Plaintiffs, forthwith, the document addressed here. However, to the extent which Antero wishes to make such disclosure subject to the Protective Order previously entered herein, it may do so. Further, prior to providing such disclosure to Plaintiffs, Antero may, if it so chooses, redact (1) percentage amounts reflected in the right-hand column of Table 1 therein, and (2) specific monetary amounts reflected throughout the document.

---

[1] This document is filed in this matter on the Court's CM/ECF system for access by Court staff only. [ECF No. 172].

### E. SMS Personnel Roles and Responsibilities

At the hearing before the undersigned, Antero's counsel stated that it produced an agreement between SMS and Antero which is responsive to Plaintiffs' request. But Plaintiffs' counsel believed there may be further responsive information. Antero's counsel stated on the record that he would inquire to determine if there is additional responsive information, and if there is, will supplement Antero's response accordingly.

Thus, the undersigned **DIRECTS** Antero's counsel to supplement Plaintiffs' request here with responsive information to the extent which it exists. And if there is no further responsive information, Antero's counsel must supplement its prior response to indicate as much. Thus, Plaintiffs' motion as to this issue is **DENIED in part** to the extent which it now is **MOOT**.

### III. CONCLUSION

Based on the foregoing, and as set forth more particularly herein, Plaintiff's motion as to the five issues delineated above is hereby **GRANTED in part** and **DENIED in part**. The remainder of Plaintiffs' motion is **DENIED as moot** based upon counsels' representation at the hearing before the undersigned that the parties had resolved those issues. It is all so **ORDERED**.

The Clerk of the Court is directed to provide a copy of this Order to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: June 14, 2021**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE