IN THE UNITED STATES DISRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

JUSTIN BUTCHER and
JENNIFER BUTCHER,

    Plaintiffs.

v.                                            Civil Action No. 1:20-CV-74
                                            (JUDGE KLEEH)

HALLIBURTON ENERGY SERVICES, INC.;
ANTERO RESOURCES CORPORATION; and
SAFETY MANAGEMENT SYSTEMS, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENIFYING IN PART HALLIBURTON ENERGY SERVICES, INC.'S MOTION [ECF NO. 155] FOR ENTRY OF A PROTECTIVE ORDER**

Presently pending before the Court is Halliburton Energy Services, Inc.'s ("Halliburton") Motion for Entry of a Protective Order [ECF No. 155], and memorandum in support [ECF No. 156], thereof, filed on June 1, 2021. Also, the Court is in receipt of Plaintiffs' response in opposition, thereto, [ECF No. 166], filed on June 10, 2021.

By Order [ECF No. 164] dated June 4, 2021, United States District Judge Thomas S. Kleeh referred the motion to the undersigned Magistrate Judge for hearing and order as to appropriate disposition.

On June 14, 2021, the undersigned Magistrate Judge conducted a hearing on the subject motion [ECF No. 169], and took the parties' arguments under advisement.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs have brought claims alleging harm resulting from an industrial accident on a natural gas drilling operation being conducted in Ritchie County, in the Northern District of West

1

Virginia. Plaintiffs allege that the accident occurred because of failure to follow protocols for lockout/tagout ("LOTO") procedures. LOTO procedures are designed to disable machinery and equipment during maintenance and repair so as to prevent worker injury resulting from release of hazardous energy. Plaintiffs allege that Defendant Antero Resources Corporation ("Antero") managed and controlled the property on which the operation was located, and that Halliburton provided workers, equipment and services to build, maintain, and operate the drill site. Plaintiffs allege that Antero contracted with Defendant Safety Management Systems, LLC ("SMS") to provide job site safety services at the drilling operation.

Halliburton's motion pertains to a number of areas of inquiry delineated in Plaintiffs' notice of deposition of Rule 30(b)(6) corporate representative of Halliburton. [See ECF 155-2].

At the outset of the hearing before the undersigned on June 14, 2021, counsel for Plaintiffs and Halliburton indicated on the record that they had met and conferred, and as a result, Plaintiffs were withdrawing from their notice of Rule 30(b)(6) deposition the following areas of inquiry: Nos. 23, 24, 34, 41, and 47. Thus, to the extent which Halliburton's motion seeks relief as to these areas of inquiry in Plaintiffs' notice of Rule 30(b)(6) deposition, Halliburton's motion is hereby **DENIED as moot**.

At the hearing before the undersigned, counsel for Plaintiffs and Halliburton characterized the dispute as pertaining to four broad categories, with each category encompassing a number of particular areas of inquiry set forth in the notice of Rule 30(b)(6) deposition. The four broad categories in dispute are as follows:

A. Information regarding entities other than Halliburton, reflected in areas of inquiry Nos. 8, 10, 20, 21, 22, 28, 32, 33, 34 (withdrawn by Plaintiffs), 35, 36, 37, 38, 40, 41 (withdrawn by Plaintiffs), 42, 43, 44, 45, 47 (withdrawn by Plaintiffs), and 58.

B. Information which Halliburton resists providing in light of the dismissal of deliberate intent and fraud claims against Halliburton, reflected in areas of inquiry Nos. 1, 2, 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, 16, 17, 19, 24 (withdrawn by Plaintiffs), 32, 33, 34 (withdrawn by Plaintiffs), 35, 36, 37, 38, 43, 44, 45, 46, 50, 51, 52, 53, 54, 55, 59, 62, 64, 65, and 67.

C. Information concerning Halliburton employees and the parameters or timeframes for the events of which they may have knowledge, reflected in areas of inquiry Nos. 23, 24 (withdrawn by Plaintiffs), 26, 36, 37, 38, 39, 40, 42, 48, 50, 52, 53, 55, 58, 60, 62, 63, 64, and 67.

D. Information concerning the financial relationship between and among Defendants, reflected in areas of inquiry Nos. 1, 29, 30, and 48.

## II. ISSUES, ANALYSIS, AND DISPOSITION

Under the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1). Importantly, "relevant information need not be admissible at the trial if the discovery appears reasonable calculated to lead to the discovery of admissible evidence." Id.

Of course, in seeking information from an organization such as Halliburton here:

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.

Fed. R. Civ. P. 30(b)(6). The undersigned addresses issues A through D, as delineated above, in turn.

### A. Information Regarding Entities Other than Halliburton

Halliburton seeks to avoid its deponent answering questions regarding information about operations of entities other than Halliburton. Plaintiffs wish to ask such questions so as to better understand the relationships among co-Defendants and other entities involved with the job site at which the incident occurred.

The undersigned recognizes that the nature of the job site at issue necessarily involves a number of different entities, each of which plays their respective role. Nonetheless, it also is evident from the discovery disputes heard in this matter otherwise that the various actors on the job site were intertwined with one another. The extent to which one actor or entity was involved with another goes to the core of Plaintiffs' claims and is the sort of information one typically would expect to seek in discovery. Thus, it is permissible for Plaintiffs to inquire of Halliburton's Rule 30(b)(6) representative about the understandings and relationships among the various actors at the job site. It may well be that Halliburton's representative is unable to answer certain questions, and that is to be expected, to a point. But such a representative should be able to explain, at least in overarching terms, what the relationships were among the various entities working at the job site, and Plaintiffs' inquiry of the same is fair.

Accordingly, based on the forgoing, the undersigned **FINDS** that these areas of inquiry are permissible. Thus, Halliburton's motion is **DENIED in part** as to this issue.

### B. Information in Light of Dismissal of Claims against Halliburton

By way of background, by Memorandum Opinion and Order dated April 15, 2021 [ECF No. 126], Judge Kleeh dismissed two of Plaintiffs' claims as to Halliburton, namely the statutory

4

deliberate intent claim and the fraud claim. Thus, only two claims remain as to Halliburton as this time – a claim for workers compensation discrimination and a claim for loss of consortium.[1]

As it has argued in the context of other discovery disputes referred to the undersigned, Halliburton argues that certain inquiries should be off limits because some claims against it have been dismissed. Thus, according to Halliburton, the areas of inquiry here are not germane given the substance of the dismissed claims. Plaintiffs argue, though, that because they still have active claims against Antero and SMS, the information they seek from Halliburton has bearing on those claims even if those claims against Halliburton itself have been dismissed.

As the undersigned has indicated in hearings on discovery disputes and in a memorandum opinion addressing the argument in a related context [ECF No. 173], such inquiry of Halliburton is fair game at the discovery phase of the matter. Although the parties at the job site may have taken pains to delineate their rights and responsibilities as to one another, a particular party may well have information bearing on claims involving those other parties. Such inquiry of Halliburton could yield information about what happened to cause the incident giving rise to Plaintiffs' claims, as well as possibly help to demonstrate how and why it happened. Accordingly, Plaintiffs must be afforded the opportunity to develop their claims by gleaning such information.

Accordingly, based on the forgoing, the undersigned **FINDS** that these areas of inquiry are permissible. Thus, Halliburton's motion is **DENIED in part** as to this issue.

### C. Information Concerning Halliburton Employees and Specified Parameters and Timeframes

Broadly speaking, Plaintiffs here seek information concerning Halliburton supervisors' and management's knowledge of the incident at issue, and their communications with employees

---

[1] There are other claims still pending as to defendants other than Halliburton.

regarding the incident. Halliburton takes issue with this because the areas of inquiry are not narrowed temporally or as to supervisors/management involved at the time of the incident.

At the hearing before the undersigned on June 14, 2021, the Court and counsel discussed narrowing the scope of inquiry here to supervisors/management who, on the day of the incident, were working the specific shift during which the incident occurred. Also discussed was narrowing the scope of inquiry about supervisor/management communications to communications pertaining to the incident. Such communications may have occurred on days other than that on which the incident occurred, but the Court's discussion with counsel focused on how the inquiry can be narrowed to those communications pertaining to the incident. Counsel for Halliburton and the Plaintiffs agreed that the inquiry of the Rule 30(b)(6) witness could proceed with that understanding.

Accordingly, based on the foregoing, Halliburton's motion is **GRANTED in part** as to this issue and Plaintiffs' inquiry of the Rule 30(b)(6) witness may proceed as specified here.

### D. Information Concerning Financial Relationships

Plaintiffs seek information here about how entities at the job site tracked and reported "non-productive" time to determine how or whether it impacts billing and how that may factor into problems adhering to LOTO protocols. Halliburton resists these areas of inquiry as not being relevant to claims or defenses, given the above-noted dismissal of certain claims against it. Halliburton also complains that the timeframe and scope are not limited.

As with the analysis regarding areas of inquiry set forth in subsection (B), above, Halliburton's argument about certain claims against it having been dismissed is unavailing. The undersigned does not rehash it here. However, as to constraining the timeframe and scope of inquiry, the undersigned discussed the same with counsel during the hearing on June 15, 2021.

As a result of that discussion with counsel, the Court determined that Plaintiffs could limit the scope and timeframe of their inquiry of the Rule 30(b)(6) witness. Specifically, the temporal scope of the inquiry could be limited to the timeframe of March 14, 2018, when Plaintiff first was present on the job site, to May 31, 2018, which is approximately one month after the incident. And the scope of inquiry otherwise could be limited to operations encompassing the job site in question, known variously as the "Ritchie County" site or "Antero Petroleum Pad 3225."

Accordingly, based on the foregoing, Halliburton's motion is **GRANTED in part** as to this issue and Plaintiffs' inquiry of the Rule 30(b)(6) witness may proceed as specified here.

### III. CONCLUSION

Based on the foregoing, and as set forth more particularly herein, Halliburton's motion as to the four issues delineated above is hereby **GRANTED in part** and **DENIED in part**. It is all so **ORDERED**.

The Clerk of the Court is directed to provide a copy of this Order to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: June 15, 2021**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE