IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JUSTIN BUTCHER and JENNIFER
BUTCHER, husband and wife, residents
of Appalachia, Virginia,

       Plaintiffs,

v.                           Civil Action No. 1:20cv74
                                     (Judge Kleeh)

HALLIBURTON ENERGY SERVICES, INC.,
a Delaware corporation, ANTERO RESOURCES
CORPORATION, a Delaware corporation, and
SAFETY MANAGEMENT SYSTEMS, LLC,
a Louisiana corporation,

       Defendants.

## OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

Pending before the Court are Defendant Safety Management Systems, LLC's Motion for Summary Judgment [ECF No. 199], Defendant Halliburton Energy Services, Inc.'s Motion for Summary Judgment [ECF No. 201], and Defendant Antero Resources Corporation's Motion for Summary Judgment [ECF No. 204]. The motions are fully briefed and ripe for decision. For the reasons that follow, Defendant Safety Management Systems, LLC's Motion for Summary Judgment [ECF No. 199] is **DENIED**, Defendant Halliburton Energy Services, Inc.'s Motion for Summary Judgment [ECF No. 201] is **GRANTED**, and Defendant Antero Resources Corporation's Motion for Summary Judgment [ECF No. 204] is **DENIED**.

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

## I.    PROCEDURAL BACKGROUND

Plaintiffs Justin and Jennifer Butcher filed suit in April 2020 against Defendants Halliburton Energy Services, Inc. ("HES"), Antero Resources Corporation ("Antero"), and Safety Management Systems, LLC ("SMS"), alleging six (6) causes of action.[1] With leave of Court, Plaintiffs amended their complaint on August 12, 2020. ECF No. 56. HES filed a Motion to Dismiss Plaintiff's Amended Complaint for lack of jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6). ECF No. 60.

By this Court's Memorandum and Opinion and Order [ECF No. 126] and subsequent stipulation between the parties [ECF No. 332],[2]

---

[1] (1) Systematic and Frequent Safety Standard Violations
(2) Ratification of Safety Violations by Defendants' Management
(3) Violation of West Virginia Code § 23-4-2(D)(2)(B) against Defendant Halliburton
(4) Negligence and Recklessness of Antero and SMS
(5) Punitive Damages against Antero and SMS
(6) Statutory Violations to Deny Plaintiff's Rights, Particularly, West Virginia Jurisdiction over his claims, but also, Workers' Compensation Discrimination and Fraud
ECF No. 56, Am. Compl.

[2] Referenced in the Order of Stipulation, the Court certified the following question to the Supreme Court of Appeals of West Virginia on February 1, 2022: "whether an employee, covered by another state's workers' compensation laws, is entitled to the protections of the anti-discrimination provisions of West Virginia's workers' compensation system?" ECF No. 321. The question, having been

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

Plaintiff Jennifer Butcher's loss of consortium against HES (Count III), Plaintiff Justin Butcher's deliberate intent claim against his employer, HES (Count III), and Plaintiff Justin Butcher's fraud and workers' compensation discrimination claims against HES (Count VI), were dismissed from the action. The only claims left in the litigation are:

- (I) Plaintiff Justin Butcher's claim for Systematic and Frequent Safety Standard Violations against HES,[3] SMS, and Antero
- (II) Plaintiff Justin Butcher's claim for Ratification of Safety Violations by Defendants' Management against HES,[4] SMS, and Antero
- (IV) Plaintiff Justin Butcher's claim for Negligence and Recklessness against Antero and SMS
- (IV) Plaintiff Jennifer Butcher's Loss of Consortium against Antero and SMS
- (V) Plaintiff Justin Butcher's Punitive Damages against Antero and SMS

ECF No. 56, Am. Compl.

Defendants Safety Management Systems, LLC, Halliburton Energy Services, Inc., and Antero Resources Corporation each move for

---

dismissed here, is no longer being considered by the Supreme Court of Appeals.

[3] It is widely known that HES, as Butcher's employer, cannot be sued under negligence theory in West Virginia. Regardless, all claims against HES have been dismissed. See Section IV.C., infra; see also ECF Nos. 126, 332.

[4] It is widely known that HES, as Butcher's employer, cannot be sued under negligence theory in West Virginia. Regardless, all claims against HES have been dismissed. See Section IV.C., infra; see also ECF Nos. 126, 332.

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

summary judgment against Plaintiffs Justin and Jennifer Butcher. ECF Nos. 199, 201, 204. This Memorandum Opinion and Order addresses each motion in turn.

## II.   UNDISPUTED FACTS

On April 30, 2018, Plaintiff Justin Butcher ("Butcher"), while employed by HES, became injured while working on a well pad, specifically Petroleum Pad 3225. ECF No. 56, Am. Compl., ¶ 18. Butcher's fingers on his right hand were amputated. Id. The injury occurred at Antero's drilling location in Ritchie County, West Virginia. Id.

Antero, the well-site owner, contracted with HES, Butcher's employer. Id. The two entities were parties to a Master Service Agreement, wherein HES was the independent contractor working on the Antero well site. ECF No. 205-2, Exhibit B, "HES Agreement." HES was contracted to provide fracking services to Antero, including workers, equipment, and services to build, maintain, and operate Antero's drilling site. Id., ECF No. 185-12, Fontenot Dep. 72:1-22. The contractor, HES, and company, Antero, agreed that HES is an independent contractor of Antero:

> 6.   **INDEPENDENT CONTRACTOR.** Contractor warrants:            (i)            Contractor shall be an independent contractor and not any agent, partner, or joint-venturer of Company in connection with this Agreement and any Work; (ii) nothing contained in this Agreement shall create or be deemed to create any such

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

> relationship between Company and Contractor;
> (iii) Contractor shall have full and complete
> care, custody, and control over all Work,
> Worksites, tools, equipment, and all other
> modalities of the Work, with no right being
> reserved by Company to direct the method or
> manner of any Work (as
> opposed to the results to be obtained); (iv)
> Contractor shall have no authority to hire any
> person on behalf of Company, and any and all
> persons whom Contractor shall employ shall be
> solely the employees of the Contractor; (v)
> Contractor shall have the control and
> management of the Work, the selection of
> employees, and the fixing of their hours of
> labor; . . . (vii) neither Contractor nor any
> member of Contractor Group is under the
> control or supervision of Company . . . .

HES Agreement, ¶ 6. Antero, by hiring HES, wanted to ensure it had the required safety programs in place for employees at the Antero site. ECF No. 205, Knittle Dep. 90:1-91:24. It was HES's responsibility to report any safety incident involving its employees that occurred on Antero's premises to OSHA. Id. 90:6-91:24.

Antero also contracted with SMS. ECF No. 220-3, Exhibit C, "SMS Agreement." SMS was also an independent contractor of Antero's and was tasked to provide job site safety services at the drilling operation. ECF No. 185-12, Fontenot Dep. 72:1-22. SMS was contracted by Antero to act as an "extra set of eyes" on site, and "to observe the workers, to document, and [] report back to Antero management." ECF No. 212-18, Fontenot Dep. 8:7-15, 9:8-14. An SMS employee, specifically a safety and health consultant hired by

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT
_____

Antero titled environmental safety site consultant, was at the worksite consistently, taking shifts at 12-hour periods. ECF No. 212-21, Fontenot Dep. 85:3-23. Eric Reese, the environmental safety site consultant "ESSC" for SMS, was supposed to observe, document critical activities such as pump maintenance, lifting, and stabbing the lubricator on the well. See Exhibit C, Eric Reese Dep., 12:2-7, 30:5-31:22.  Reese described SMS's purpose at the well pad:

> So our job on-site is to observe, document, report. We're doing -- we're walking around the location, checking out the sumps. We're walking where the rainwater gathers, and we're doing periodic testing on the water. We're observing critical activities with the wireline, with frac and any other activities.

Eric Reese Dep., 13:3-9. It was also part of Reese's duties to report lockout-tagout failures during pump maintenance to SMS, stop the job at that particular pump, and work to solve the deficiency. Exhibit C, Eric Reese Dep., 31:7-22.

The lockout-tagout, or LOTO, safety procedure in pump maintenance and safety is important in this case. LOTO is a safety procedure "by which energized pieces of equipment are deenergized to assure that people do not get injured while working on them." ECF No. 199-1, Exhibit A, Butcher Dep. 43:1-18. Butcher, employed by HES for the "line box job," received training on this procedure by HES, pursuant to 29 CFR § 1910.147. Id. 62:7-11. Butcher was

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

also educated on job safety analysis ("JSA"), which requires meetings with employees from the worksite and signatures that the JSA was completed on that particular day. Id. at 43:19-44:4. A supervisor working for HES would typically prepare a pump maintenance JSA, which would reference the LOTO for that piece of equipment. Id. at 44:10-21.

In addition to training on JSA and LOTO, as it relates to general pump maintenance, Butcher was also trained on "firing up [Q10] pumps and killing [Q10] pumps with etech." Id. at 45:18-46:7. Butcher certified that he "read all the signs, standards, methods, process maps, manuals, JSAs, and other supporting documentation that have been provided to [him] in the frac 101 course" and was aware of all the required steps in the LOTO process before working in the field at the Zanesville yard. Id. at 51:9-23, 54:19-55:9. Butcher performed pump maintenance between 60 and 100 times prior to his date of injury, April 30, 2018. Id. at 64:5-17.

As a line box employee, Butcher was tasked with "[o]pening and closing valves, sending water down the hole." Id. 62:10-15. The day of Butcher's injury, he performed pump maintenance without completing LOTO. Id. at 116:1-119:4. Failure to perform LOTO was in contravention of Butcher's safety training. Id. Butcher assumed the pump at the site of the injury was switched off, and therefore

did not perform LOTO. Butcher's mentor advised performing LOTO slows down the work on the wellsite. Id. at 115:1-25. Id. Prior to his injury, he heard a radio call by Chris Stallard for pump maintenance at three to four locations. Id. at 120:10-121:7.

The ESSC Journal entry from the date of Butcher's injury reads:

> When the lubricator was stabbed onto the well, ESSC noticed that a Halliburton employee was running while holding his hand. Two [short service employers, or SSE] were performing pump maintenance without supervision. The pump was not locked out on location. One of the SSE's had his right hand in the pod, whenever the plunger rolled and pinched his right hand. The employee was immediately taken by a designated vehicle on site to UHC in Bridgeport. Notifications and reports were completed on location. A safety stand down was held with all of the employees. The employees were reminded about following procedures and mentors were reminded about their responsibility of taking care of their SSE's. . . .

ECF No. 209-4, Exhibit 9 to Dep. The OSHA Report [ECF No. 56-3] details the inspection completed by OSHA on HES. The report includes an incident report summarizing how Butcher became injured, and made the following findings:

> [I]t was determined that the site management and employees were not following the company's lockout/tagout policy for pump maintenance. A citation is proposed under the Section (5)(a)(1) general duty clause because the oil and gas industry is exempt from the 1910.147

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

> LOTO standard. The employer failed to assure that employees were verifying that all hazardous energy had been eliminated and machine motion stopped prior to performing pump maintenance.

Id.

Any incidents implicating safety protocols would be reported directly to Antero, the site operator. ECF No. 185-12, Fontenot Dep. 72:1-22. According to its sole contract with Antero, SMS could not hire, discipline or discharge HES employees at the worksite. Exhibit B, Troy Roach Dep. 207:9-209:24. Neither Antero nor SMS were contractually responsible for training and providing safety equipment to HES employees – only HES was responsible for that. Id., HES Agreement, ¶ 6. Antero did not dictate when pump maintenance should be performed by HES. Roach Dep. at 212:22-213:2. The entities contracted by Antero to work at the wellsite are each working at the direction of the contracted agreements. Id. 152:12-23. When describing who is in charge at the worksite, HES's representative testified: "there really isn't one person in control of [the worksite] because there [are] different operations going on. There [are] different contractors on location." Id. "All personnel on location have stop work authority." Exhibit B, Troy Roach Dep. 208:8-13. An SMS employee is not expected to be present during pump maintenance if a supervisor would already be present.

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

Id. 208:14-18. SMS could not control or direct the fracking operations of HE. Id. 207:19-208:7.

Butcher's negligence theory of liability against SMS is that it had a duty to ensure a safe place to work and "was responsible for control, supervision and enforcement of safety standards at the work site where [Butcher] was injured." Am. Compl. ¶¶ 9, 52. Butcher alleges SMS "was under contract with Antero to provide it with 24-hour job site safety instructors, inspectors, supervisors, and/or safety compliance personnel at Antero's West Virginia fracking well site in Ritchie County where the Plaintiff was injured on April 30, 2018." Id. at ¶ 7. Butcher's negligence theory of liability against Antero is that, as the premises owner, it had a duty to ensure site safety to Butcher. Id. at ¶ 52. Butcher maintains Antero always had control over the work site. Id. at ¶¶ 51-76.

Antero and HES were in agreement that nonproductive time ("NPT") would be permitted up to 3 hours a day. ECF No. 208-7, Roach Dep. 150:1-23. NPT over 3 hours per day would be penalized against HES at a $2,000 per hour rate. ECF No. 208-8, Knittle Dep. 142:1-144:24.  Keith Stansbury, the agent of record for Antero, was in charge of operations at the Antero wellpad. ECF No. 208-25, Stansbury Dep. 88:1-89:24. Antero management personnel had control over the worksite. Id. Eric Reese and Chris Echols of SMS

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

were supervised by and submitted incident reports to Jerry Klontz, employee of Antero. ECF No. 208-26, Klontz Dep. 89:14-24. Klontz would "follow up" with Reese or other SMS employees and "make sure that they were doing what they needed to be doing on location." ECF No. 208-27, Klontz Dep. 9:3-12.

### III. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." <u>Id.</u> at 317-18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

This Court has previously summarized the burden imposed on parties opposing a summary judgment challenge.

> However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

Watson v. Warden, FCI Hazelton, Civil Action No. 2:16-CV-76, 2017 WL 1955532, at *2 (N.D.W. Va. May 11, 2017) (Bailey, J.). The Court views the evidence in the light most favorable to Plaintiffs, the non-moving party, and draws any reasonable inferences in Plaintiffs' favor. Fed. R. Civ. P. 56(a); Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

## IV.   DISCUSSION

Plaintiffs' action against SMS and Antero sound in negligence. SMS and Antero move for summary judgment, separately,

against Plaintiffs, arguing there is no dispute as to material fact and they are entitled to judgment as a matter of law because neither defendant owed a duty to Plaintiff Justin Butcher at the worksite, and the defendants were not the proximate cause of Butcher's injuries. Plaintiffs respond in opposition and assert both SMS and Antero had a duty of reasonable care to all employee subcontractors - including Butcher - at the worksite.

The Court will address each motion for summary judgment in turn, beginning with Antero's motion. ECF No. 204.

**A. Antero's Motion for Summary Judgment [ECF No. 204] is denied.**

    **1. Antero maintained the "power of control" over Halliburton, the independent contractor of Antero; therefore, Antero owed Halliburton a duty of a reasonably safe worksite.**

To succeed in a claim for negligence, a plaintiff must prove, by a preponderance of the evidence, that the defendant owed him a duty, the defendant breached the duty owed, and the negligent breach was the proximate cause of his injury. Wheeling Park Comm'n v. Dattoli, 787 S.E.2d 546, 551 (W. Va. 2016).

"No action for negligence will lie without a duty broken." Syl. Pt. 1, in part, Parsley v. Gen. Motors Acceptance Corp., 280 S.E.2d 703 (W. Va. 1981). A defendant can owe a duty of care to a plaintiff without them being in a contractual relationship. Syl. Pt. 2, Sewell v. Gregory, 371 S.E.2d 82 (W. Va. 1988). Importantly at this stage, "[t]he determination of whether a defendant . . .

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

owes a duty to the plaintiff is not a factual question for the jury; rather the determination . . . must be rendered by the court as a matter of law." Syl. Pt. 5, Eastern Steel Constructors, Inc. v. City of Salem, 549 S.E.2d 266, 267-68 (W. Va. 2001) (citation omitted).

West Virginia "law is clear that a property owner only has a duty to turn over a reasonably safe workplace to an independent contractor[.]" France v. Southern Equipment Co., 689 S.E.2d 1, 10 (W. Va. 2010).

> An owner who engages an independent contractor to perform a job for him or her may retain broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the contract - including the right to inspect, to stop the work, to make suggestions or recommendations as to the details of the work, or to prescribe alterations or deviations in the work - without changing the relationship from that of owner and independent contractor, or changing the duties arising from that relationship.

Syl. Pt. 4, Shaffer v. Acme Limestone Co., 524 S.E.2d 688 (W. Va. 1999). An employer (Antero) who hires an independent contractor (HES) does not become liable for its negligence even though the employer "retain[ed] broad general power of supervision and control . . . including the right to inspect, to stop the work, to make suggestions or recommendations as to the details of the work, or to prescribe alterations or deviations." Id. at 696. "One who would defend against tort liability by contending that the injuries

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

were inflicted by an independent contractor has the burden of establishing that he neither controlled nor had the right to control the work . . . ." Syl. Pt. 1, Sanders v. Georgia-Pacific Corp., 225 S.E.2d 218 (W. Va. 1976). "The power of control factor refers to control over the means and method of performing the work." Shaffer, 524 S.E.2d at 696 (internal citation and quotation marks omitted). Even where

> (1) [independent contractor's] employees arrived routinely at 7:00 in the morning at [owner's] facility; (2) [owner] directed [independent contractor's] employees as to which products to pick-up and deliver; (3) [owner] advised [independent contractor's] employees when they should load their trucks at the legal weight limit; (4) [owner] provided [independent contractor's] employees with safety information; (5) [owner] required [independent contractor's] drivers, when first hired, to undergo safety hazard training; (6) trucks owned by [independent contractor] were loaded by [owner's] employees; (7) compensation levels for work by [independent contractor] was established by [owner]; (8) [independent contractor's] employees were required to provide [owner's ] customers with a copy of invoices and to return invoice copies to [owner] (9) [owner] suggested the routes [independent contractor's] employees should take; and (10) when [owner] closed its facility each day, the [independent contractor's] employees went home[,]

the owner would still not have the "power of control." Shaffer, 524 S.E.2d at 696.

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

To defeat summary judgment, Plaintiff attempts to distinguish Antero as the "controlling employer." ECF No. 207 at 3. Plaintiff overcomes the summary judgment standard here. Viewing the facts in the light most favorable to Plaintiffs, Antero maintained the right to control the work performed by HES – the independent contractor – and its employees. Because Antero had the power of control, it owed Plaintiff a duty of reasonably safe workplace as a matter of law. France v. Southern Equipment Co., 689 S.E.2d 1, 10 (W. Va. 2010).

Antero's ownership of the wellsite, and retention of power of supervision and control to insure satisfactory performance of the contract weigh in favor of the power of control element in the independent contractor context. All safety incidents would be reported directly to Antero and Antero, like its subcontractors, had stop work authority. Antero had retained the "right to inspect, to stop the work, to make suggestions or recommendations as to the details of the work, or to prescribe alterations or deviations," it owes to HES, and therefore Plaintiff, a legal duty of a reasonably safe place to work as a matter of law. Shaffer, 524 S.E.2d at 696.

After considering the record before the Court in the light most favorable to Plaintiffs, Antero had the power of control over HES's work at the well pad giving rise to Plaintiff's injury.

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

Therefore, Antero owed HES and Plaintiff a duty of a reasonably safe workplace, and Antero's motion for summary judgment must be **DENIED** on this ground. ECF No. 204.

Plaintiff also attempts to attach a duty to Antero by the borrowed servant rule:

> Under the so called "borrowed servant" rule a general employer remains liable for the negligent act of his servant [u]nless it affirmatively appears that he has completely relinquished control of the servant's conduct from which the alleged negligence arose to the person for whom the servant is engaged in performing a special service.

Burdette v. Maust Coal & Coke Corp., 222 S.E.2d 293, 299 (W. Va. 1976) (internal citation and quotation marks omitted).  In this scenario, Antero is the general employer and SMS is its borrowed servant.

Antero does not escape its duty here, either. SMS "was under contract with Antero to provide it with 24-hour job site safety instructors, inspectors, supervisors, and/or safety compliance personnel at Antero's West Virginia fracking well site in Ritchie County where the Plaintiff was injured on April 30, 2018." Am. Compl. at ¶ 7. As the premises owner, Antero had a duty to ensure site safety to Butcher and always maintained control over the work site, including SMS. Eric Reese and Chris Echols of SMS were supervised by and submitted incident reports to Jerry Klontz, employee of Antero. ECF No. 208-26, Klontz Dep. 89:14-24. Klontz

would "follow up" with Reese and other SMS employees to "make sure that they were doing what they needed to be doing on location." ECF No. 208-27, Klontz Dep. 9:3-12. These facts alone support the borrowed servant theory between SMS and Antero and require the Court to deny summary judgment here.


   **2. Whether Antero breached its duty of care to Plaintiff or proximately caused Plaintiff's injury are questions of fact for the jury; therefore, Antero's motion for summary judgment is denied.**

In addition to proving by a preponderance of the evidence that Antero owed a duty to Butcher, Butcher must also prove Antero breached its duty and proximately caused Butcher's injury. See Medley v. Lowe's Home Centers, LLC, No. 1:18cv224, 2020 WL 2616399, *2 (N.D.W. Va. May 22, 2020) (citing Senkus v. Moore, 535 S.E.2d 724, 727 (W. Va. 2000)). Upon owing a duty of a reasonably safe workplace, "[a] property owner cannot be held liable for any hazards thereafter created by the independent contractor." France v. Southern Equipment Co., 689 S.E.2d 1, 10 (W. Va. 2010).

Proximate cause is a question for the jury. Arnazzi v. Quad/Graphics, Inc., 621 S.E.2d 705, 708 (W. Va. 2005) (per curiam). Proximate cause is essential to the claim and "is the last negligent act contributing to the injury[,] [] without which the injury would not have occurred." Syl. Pt. 5, Hartley v. Crede, 82 S.E.2d 672 (W. Va. 1954), overruled on other grounds, State v.

Butcher v. Halliburton, et al.                                    1:20cv74

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

Kapa, 311 S.E.2d 412 (W. Va. 1983). "In other words, proximate cause must be understood to be that cause which in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would not have occurred." Spencer v. McClure, 618 S.E.2d 451, 455 (W. Va. 2005) (internal quotations omitted). "Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. Pt. 6, McAllister v. Weirton Hosp. Co., 312 S.E.2d 738 (W. Va. 1983) (internal citation omitted).

Here, viewing the facts in the most favorable light to Plaintiffs, a reasonable juror could conclude that Antero breached its duty to Butcher, and that Antero proximately caused Butcher's injuries; therefore, denying summary judgment is required on these grounds. A juror could conclude that, because Antero had the power of control, it breached its duty to provide a reasonably safe workplace by knowingly permitting LOTO safety procedures to be routinely disregarded by HES. See ECF No. 56, Am. Compl., ¶ 78. According to West Virginia law, the comparative negligence of Butcher, SMS, and Antero must be considered by the jury.

Butcher v. Halliburton, et al.                                    1:20cv74

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

For the same reasons Antero's motion for summary judgment is denied on the negligence claim, it is also denied as to Plaintiff Jennifer Butcher's loss of consortium claim.

### 3. Plaintiffs' punitive damages claim survives summary judgment.

Finally, Antero moves for summary judgment on Plaintiff's punitive damages claim.

> An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

W. Va. Code 55-7-29(a) (2015).

Relying on all facts in the light most favorable to Plaintiffs, Antero's motion for summary judgment on Plaintiff's punitive damages claim is **DENIED**. Butcher alleges Antero consciously disregarded safety standards at its job site, and that this was carried out willfully, wantonly, and recklessly. ECF No. 56, Am. Compl. ¶ 78. Poignant to this issue is the evidence that Antero supported a penalty for NPT, which includes LOTO, over 3 hours per day at a $2,000 per hour rate. ECF No. 208-8, Knittle Dep. 142:1-144:24. Antero was the owner of the wellpad, hired contractors for safety regulation, and had the power of control over the operations. All the evidence discussed herein creates a

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

material question of fact as to whether Antero's conduct was carried out "with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code 55-7-29(a) (2015). Antero's motion for summary judgment [ECF No. 204] is **DENIED** on this ground.

**B. Safety Management Systems, LLC's, Motion for Summary Judgment [ECF No. 199] is denied.**

**1. SMS owed Halliburton and its employees a duty of reasonable care.**

SMS, like Antero, argues it owes Plaintiffs no legal duty and is entitled to judgment as a matter of law on Plaintiffs' negligence claim. The same negligence standard stated above applies to SMS: to succeed in a claim for negligence, a plaintiff must prove, by a preponderance of the evidence, that the defendant owed him a duty, the defendant breached the duty owed, and the negligent breach was the proximate cause of his injury. Wheeling Park Comm'n v. Dattoli, 787 S.E.2d 546, 551 (W. Va. 2016).

A defendant can owe a duty of care to a plaintiff without them being in a contractual relationship: "[i]n the matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which results in an injury to others." Syl. Pt. 2, Sewell v. Gregory, 371 S.E.2d 82 (W. Va. 1988).

> A general contractor supervising a
> construction project that employs multiple
> subcontractors—where the general contractor
> oversees the details of the work—has a duty of
> safety to all workers on the site, and will be
> held liable for safety violations that could
> reasonably have been prevented or abated by
> reason of the general contractor's supervisory
> capacity.

France v. Southern Equipment Co., 689 S.E.2d 1, 15 (W. Va. 2010).

Again, whether a plaintiff owes a duty is a legal question to be

determined by the court as a matter of law. Eastern Steel

Constructors, Inc. v. City of Salem, 549 S.E.2d 266, 267-68 (W.

Va. 2001) (citation omitted).

SMS argues it owed no duty of care to Plaintiffs because,

while it had a contract with Antero, it had no contractual

relationship with HES, Butcher's employer. ECF No. 200; See Exhibit

B, Troy Roach Dep. 207:9-209:24. Furthermore, according to its

contract with Antero, SMS could not hire, discipline or discharge

HES employees, nor was it contractually responsible for training

and providing safety equipment to HES employees. Roach Dep. 207:9-

209:24. Whether SMS was contracted with HES does not answer the

question of duty here. Indeed, no contractual relationship between

SMS and HES need exist for SMS to owe a duty of reasonable care to

the workers – including Butcher - at the Antero drilling site.

Sewell v. Gregory, 371 S.E.2d 82 (W. Va. 1988).

Butcher v. Halliburton, et al.                                    1:20cv74

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

SMS owed a duty of reasonable care to HES and its employees. SMS was contracted by Antero to provide job site safety services at the drilling site, and act as an "extra set of eyes" on site, and "to observe the workers, to document, and [] report back to Antero management." Fontenot Dep. 8:7-15, 9:8-14, 72:1-22. An SMS employee was always at the worksite to provide these safety services, changing shift every 12 hours. Fontenot Dep. 85:3-23. It was an SMS employee who took the ESSC title, Eric Reese, whose duties included reporting specifically lockout-tagout failures during pump maintenance and working to solve the deficiency. Exhibit C, Eric Reese Dep., 31:7-22. SMS "was responsible for control, supervision and enforcement of safety standards at the work site where [Butcher] was injured," and was under contract with Antero to do exactly this. Am. Compl. ¶¶ 7, 9. Based upon these facts, in the light most favorable to Plaintiff, the Court finds Plaintiff established SMS owed HES and its employees a duty of reasonable care.

For the same reasons discussed in Section A.2., supra, whether SMS breached its duty of care to Plaintiff or proximately caused Plaintiff's injury are questions of fact for the jury; therefore, SMS's motion for summary judgment is **DENIED.** ECF No. 199.

**C. Halliburton Energy Services, Inc.'s Motion for Summary Judgment [ECF No. 201]**

**Butcher v. Halliburton, et al.**                                    **1:20cv74**

<u>OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT</u>

HES also moved for summary judgment on the remaining claims in this action. ECF No. 201. Those claims, loss of consortium against HES (Count III), deliberate intent claim against HES (Count III), and fraud and workers' compensation discrimination claims against HES (Count VI), have since been dismissed. ECF Nos. 126, 332.

Therefore, finding there exists no genuine dispute as to any material fact and HES is entitled to judgment as a matter of law, HES's motion for summary judgment [ECF No. 201] is **GRANTED**. HES is **DISMISSED WITH PREJUDICE** from this action. HES and its pending motions are hereby **TERMINATED**, and, pursuant to Federal Rule of Civil Procedure 54(b) and finding no just reason for a delay of the appeal of this Order, the Court **DIRECTS** entry of a final judgment in favor of HES.

Finally, because the Court did not consider excluding the OSHA Report within this Memorandum Opinion and Order, Plaintiffs' Motion for Leave to File Surreply to Defendant Antero's Reply in Support of Motion is **DENIED**. ECF No. 219.

It is so **ORDERED**.

The Clerk is further **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

**DATED**: March 30, 2023

*Tom S Kleh*

**Butcher v. Halliburton, et al.**                                   **1:20cv74**

OMNIBUS MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA