```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

JUSTIN BUTCHER and JENNIFER
BUTCHER, husband and wife, residents
of Appalachia, Virginia,

      Plaintiffs,

v.                                    Civil Action No. 1:20cv74
                                                            (Judge Kleeh)

ANTERO RESOURCES CORPORATION,
a Delaware corporation, and
SAFETY MANAGEMENT SYSTEMS, LLC,
a Louisiana corporation,

      Defendants.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO EXCLUDE EXPERT PETTY**

Pending before the Court is Defendant Antero Resources Corporation and Safety Management Systems, LLC's,[1] Motion to Exclude Expert Petty. ECF No. 220. The motion is fully briefed and ripe for decision. For the reasons discussed herein, the motion is **DENIED**.

                I.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs' claims to be tried by a jury are:

- (I) Plaintiff Justin Butcher's claim for Systematic and Frequent Safety Standard Violations against SMS and Antero
- (II) Plaintiff Justin Butcher's claim for Ratification of Safety Violations by Defendants' Management against SMS and Antero

---

[1] Defendant Safety Management Systems, LLC, filed motion for joinder and it was granted by order. ECF No. 337.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO EXCLUDE EXPERT PETTY**

- (IV) Plaintiff Justin Butcher's claim for Negligence and Recklessness against Antero and SMS
- (IV) Plaintiff Jennifer Butcher's Loss of Consortium against Antero and SMS
- (V) Plaintiff Justin Butcher's Punitive Damages against Antero and SMS

ECF No. 56, Am. Compl.

On April 30, 2018, Plaintiff Justin Butcher ("Butcher"), while employed by Halliburton Energy Services, Inc. ("HES"), became injured while working on a well pad, specifically Petroleum Pad 3225. ECF No. 56, Am. Compl., ¶ 18. Butcher's fingers on his right hand were amputated. Id. The injury occurred at Antero's drilling location in Ritchie County, West Virginia. Id.

Antero, the well-site owner, contracted with HES. Id. The two entities were parties to a Master Service Agreement, wherein HES was the independent contractor working on the Antero well site. ECF No. 205-2, Exhibit B, "HES Agreement." HES was contracted to provide fracking services to Antero, including workers, equipment, and services to build, maintain, and operate Antero's drilling site. Id., ECF No. 185-12, Fontenot Dep. 72:1-22. The contractor, HES, and company, Antero, agreed that HES is an independent contractor of Antero.

Antero also contracted with SMS. ECF No. 220-3, Exhibit C, SMS Master Services Agreement. SMS was to provide job site safety

services at the drilling operation. ECF No. 185-12, Fontenot Dep. 72:1-22. SMS was contracted by Antero to act as an independent contractor and an "extra set of eyes" on site, and "to observe the workers, to document, and [] report back to Antero management." ECF No. 212-18, Fontenot Dep. 8:7-15, 9:8-14. It was also part of SMS employees duties to report lockout-tagout failures during pump maintenance to SMS, stop the job at that particular pump, and work to solve the deficiency. Exhibit C, Eric Reese Dep., 31:7-22.

The lockout-tagout, or LOTO, safety procedure in pump maintenance and safety is important in this case. LOTO is a safety procedure "by which energized pieces of equipment are deenergized to assure that people do not get injured while working on them." ECF No. 199-1, Exhibit A, Butcher Dep. 43:1-18. Butcher, employed by HES for the "line box job," received training on this procedure by HES, pursuant to 29 CFR § 1910.147. Id. 62:7-11. Butcher was also educated on job safety analysis ("JSA"), which requires meetings with employees from the worksite and signatures that the JSA was completed on that particular day. Id. at 43:19-44:4. A supervisor working for HES would typically prepare a pump maintenance JSA, which would reference the LOTO for that piece of equipment. Id. at 44:10-21. The day of Butcher's injury, he performed pump maintenance without completing LOTO. Id. at 116:1-

119:4. Failure to perform LOTO was in contravention of Butcher's safety training. Id.

OSHA conducted an investigation after the accident. The OSHA Report [ECF No. 56-3] details the inspection completed by OSHA on HES. The report includes an incident report summarizing how Butcher became injured, and made the following findings:

> [I]t was determined that the site management and employees were not following the company's lockout/tagout policy for pump maintenance. A citation is proposed under the Section (5)(a)(1) general duty clause because the oil and gas industry is exempt from the 1910.147 LOTO standard. The employer failed to assure that employees were verifying that all hazardous energy had been eliminated and machine motion stopped prior to performing pump maintenance.

Id.

Butcher's negligence theory of liability against SMS is that it had a duty to ensure a safe place to work and "was responsible for control, supervision and enforcement of safety standards at the work site where [Butcher] was injured." Am. Compl. ¶¶ 9, 52. Butcher alleges SMS "was under contract with Antero to provide it with 24-hour job site safety instructors, inspectors, supervisors, and/or safety compliance personnel at Antero's West Virginia fracking well site in Ritchie County where the Plaintiff was injured on April 30, 2018." Id. at ¶ 7. Butcher's negligence theory

**Butcher v. Antero & SMS**                                                               **1:20cv74**

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO EXCLUDE EXPERT PETTY**

of liability against Antero is that, as the premises owner, it had a duty to ensure site safety to Butcher. Id. at ¶ 52. Butcher maintains Antero always had control over the work site. Id. at ¶¶ 51-76.

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of testimony by expert witnesses.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

"[A] district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." United States v. Smith, 919 F.3d 825, 835 (4th Cir. 2019). "Relevant evidence, of course, is evidence that helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir.

2017) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993)).

"The court, as the gatekeeper, should admit the proposed expert testimony only if it is reliable and helps the jury in understanding the issues or evidence." Wells v. Antero Res. Corp., 497 F. Supp. 3d 96, 99 (N.D.W. Va. 2020) (Keeley, J.) (citing Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999), and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993)). "The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence." Id. (citing Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001), and Daubert, 509 U.S. at 592 n.10).

To assess reliability, the court conducts a flexible inquiry evaluating the expert's methodology rather than the expert's conclusion. TFWS v. Schaefer, 325 F.3d 234, 240 (4th Cir. 2003). "A reliable expert opinion must be based on scientific technical or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999). Courts are not required "to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." McEwen v. Baltimore Washington Med. Ctr. Inc., 404 F.

App'x 789, 791-92 (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)). While an expert may not instruct the jury as to what conclusion to reach, the opinion may embrace an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704(a).

Daubert recited the non-exclusive factors:

> (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

United States v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003) (quoting Daubert, 509 U.S. at 593-94).

### III. DISCUSSION

Defendants attack Mr. Petty's reliability as an expert witness on the grounds that his opinions are speculative, conclusory, and not based upon methodology. "All Daubert demands is that the trial judge make a preliminary assessment of whether the proffered testimony is both reliable . . . and helpful." Maryland Cas. Co. v. Therm-O-Disc, Inc., 137 F.3d 780, 783 (4th Cir. 1998) (internal quotation marks omitted).

Mr. Petty was retained by Plaintiffs to "testify on matters related to breaches of industry regulations and standards by the

**Butcher v. Antero & SMS**                                                              **1:20cv74**

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO EXCLUDE EXPERT PETTY**

defendants that lead to the injury suffered by the plaintiff, including, but not necessarily limited to, all matters contained in his reports." ECF No. 220-8, Ex. F, Pl's Rule 26 Discl. In opining that "Antero [and SMS] did not meet their Standard of Care obligations to help stop ongoing site safety hazards that ultimately resulted in the Butcher incident and injuries[,]" Mr. Petty reviewed the OSHA Incident file. ECF No. 220-9, Ex. I, Petty Supp. Report.

Plaintiffs have proven by a preponderance of the evidence that Mr. Petty's opinion testimony is admissible at this stage. The Court has already found the OSHA Report relevant to the issues for trial and preliminarily admissible under Rule 803(8) of the Federal Rules of Evidence. Contrary to Defendants' argument, Mr. Petty's opinions are not speculative or conclusory, and are based upon proper methodology. Mr. Petty's opinion on workplace safety standards will be helpful to a jury.

The Court finds no reason to exclude the testimony of Mr. Petty before trial.  Mr. Petty conducted a review of the OSHA report, which included findings pursuant to an inspection, and used his specialized knowledge to determine what issues he believed led to Butcher's injury.  He cited in his report the evidence of employees refusing to follow LOTO requirements, which will assist

**Butcher v. Antero & SMS**                                                       **1:20cv74**

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO EXCLUDE EXPERT PETTY**

the trier of fact in determining whether the entities on site – HES, SMS, and Antero – knew about this failure to follow safety protocol. Based on this, and the training measures implemented for new employees on site, he opined that it was known on site that LOTO procedures were not being followed. In reaching his conclusions, Mr. Petty relied on the OSHA Report and, essentially, used a process-of-elimination method to opine that the LOTO failures could not have been ignored by the entities on site.

The issues with Mr. Petty's opinions and conclusions warrant cross examination by Defendants at trial, which they are entitled to. As Plaintiffs point out in their response [ECF No. 222] and at the hearing on January 20, 2022, both parties' experts apply the same industry standards and come to different conclusions. Compare ECF No. 220-9, Ex. I, Petty Supp. Report with ECF No. 220-6, Ex. F, McCartney Report. The parties are entitled to elicit battling expert testimony on these issues, provided all other evidentiary hurdles are met. Mr. Petty's opinions are not so unreliable as to warrant exclusion of his testimony and the motion to exclude is **DENIED**.

## IV. CONCLUSION

Therefore, for all the reasons discussed herein and on the record on January 20, 2022, the Court **DENIES** the motion to exclude expert. ECF No. 220.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

**DATED**: March 31, 2023

*Tom S Kleeh*
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA